IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 14, 2012

## MICHAEL JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 09-00312     James Lammey, Judge**

_____

**No. W2011-01465-CCA-R3-PC  - Filed July 23, 2012**

_____

The Petitioner, Michael Jones, appeals the Shelby County Criminal Court's denial of post-conviction relief from his conviction for second degree murder and resulting thirty-year sentence.  The Petitioner contends that he received the ineffective assistance of counsel and that his guilty plea was unknowing, involuntary, and unintelligent because he received the ineffective assistance of counsel.  We affirm the judgment of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Scottie O. Wilkes, Memphis, Tennessee, for the appellant, Michael Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's conviction results from the March 20, 2008 shooting and death of Darion Cobb.  He was indicted for first degree murder.  The Petitioner was the shooter, but his brother, Kortney Jones, was also charged with first degree murder.  The judgment reflects that the Petitioner pled guilty to second degree murder.  Kortney Jones pled guilty to criminally negligent homicide and was released upon time served.  The Petitioner filed a petition for post-conviction relief, and counsel was appointed.

At the post-conviction hearing, Leslie Cole testified that she was the Petitioner's aunt. She and her sister, the Petitioner's mother, retained trial counsel to represent the Petitioner. She and other family members met with counsel and provided information about the case for counsel to investigate. She said counsel told her he was working on the case but never provided specifics. She asked counsel to have the Petitioner's written statement suppressed. She thought counsel should have kept her informed because she paid a $10,000 fee. She said that at the Petitioner's request, she called counsel's office five or six times to ask counsel to visit the Petitioner in jail but was told three or four times that counsel was out of town.

Ms. Cole testified that she spoke with the Petitioner the night before the plea hearing. She told him not to accept the plea offer. She told the Petitioner she would get money to hire a different lawyer. She said the Petitioner's thirty-year sentence was devastating.

On cross-examination, Ms. Cole testified that she spoke with the Petitioner by telephone regularly while he was in jail. She said the Petitioner, who was sixteen at the time of the crimes, and his brother were charged with first degree murder and were facing life sentences. The family retained an attorney for the Petitioner's brother, as well. She acknowledged that the Petitioner pled guilty to the reduced offense of second degree murder. On redirect examination, she said trial counsel never advised her that he could not talk to her because of his attorney-client privilege with the Petitioner.

Angela Tillman, the Petitioner's mother, testified that she met with trial counsel when he was retained and at court dates. He told her the charge would likely be reduced to second degree murder. She did not think he investigated the case. She said the Petitioner asked her repeatedly when counsel would visit him at the jail. She said that when she called counsel, she spoke with his son or left a voice mail message. She did not know whether counsel filed any motions. She understood that counsel planned to seek suppression of the Petitioner's statement on the basis that neither of his parents were present when he made it, but she did not know whether counsel tried to have the statement suppressed. She said she told counsel that she had been elsewhere at the police station when the Petitioner gave the statement but that she had not been aware he was giving a statement. She said she paid counsel $5000 of the $15,000 fee. She thought her sister and the Petitioner's father provided counsel with names of witnesses, although she did not provide him with any due to her work schedule. She said she did not know the Petitioner was going to plead guilty until it took place. She said she would not have advised the Petitioner to plead guilty.

On cross-examination, Ms. Tillman testified that she visited the Petitioner regularly at the jail and that the jail records were wrong if they did not reflect her visits. She thought the Petitioner received too lengthy a sentence because the homicide was the Petitioner's first offense. She recalled meeting with her son Kortney Jones's attorney and discussing that she

-2-

had two sons facing possible life sentences.  She agreed trial counsel negotiated with the State.  She agreed that due to the efforts of the defense attorneys, Kortney Jones pled guilty to criminally negligent homicide and was released upon time served and that the Petitioner entered his plea to second degree murder and was sentenced to thirty years.  She did not know that a juvenile could give a statement without a parent present.

The Petitioner testified that he first met trial counsel in juvenile court.  He said they talked for ten to fifteen minutes.  Counsel told him the charge would not remain first degree murder.  He said he saw counsel at the jail later but did not talk to him.  He said that aside from court dates, counsel met with him three or four times between when his case was transferred from juvenile court, and February 2009, when he was indicted. The Petitioner said his conversations with counsel were brief.  He did not ask counsel about the status of his case.  He said counsel told him he might receive a life sentence.  Counsel never told him about filing any motions, nor did counsel give him copies of motions.  He estimated that he met with trial counsel two times after his first appearance in criminal court and that the meetings were fifteen to twenty minutes each.  He said that he sometimes met with counsel at court appearances but that counsel did not always attend.

The Petitioner testified that he did not receive the discovery materials until after he pled guilty and was transferred to a Tennessee Department of Correction (TDOC) facility.  He said he had previously requested the discovery materials from counsel, who told him he was not going to trial and did not need them.

The Petitioner testified that trial counsel never explained the range of sentences for second degree murder.  He claimed he learned that information after he was transferred to TDOC.  He said he and counsel reviewed the judgment sheet on the day of the guilty plea.  He acknowledged it stated the sentence was thirty years at 100%.  He said he would not have been comfortable with counsel's representation at a trial.  He said his mother visited him weekly at the jail.  He tried to get information from her, but she did not have any.  He said that his family talked to him about getting another attorney and that his mother and his aunt told him not to plead guilty.

The Petitioner testified that he was uncomfortable when he gave his statement to the police.  He felt like he did not have a choice.  He said "she" told him that if he did not say what happened, he would serve a life sentence.  He had seen his parents and knew they were in the building.  He would have wanted a parent in the room during his statement had he known one of them could be there.  He was never given the option to have a parent in the room. He said trial counsel never mentioned trying to get the statement suppressed or filing other motions.

On cross-examination, the Petitioner testified that his family told him not to plead guilty and that they would get him another attorney the week before he entered the guilty plea. He said he grew dissatisfied with trial counsel over time. He said his brother was a concern. He acknowledged that his brother was not the shooter but faced the same conviction and sentence. He said this weighed heavily on his mind. Saving his brother from a life sentence factored into his decision to plead guilty "[i]n so many ways[.]" He was aware of the allegation that a large group of people witnessed the crime.

The Petitioner testified that he remembered the guilty plea proceedings. He recalled the court's asking trial counsel if the defense agreed with the State's statement of facts and counsel's addressing the case and concerns. He did not recall the court or counsel's stating that the plea was a best-interest plea. He remembered being under oath. He said he answered affirmatively when the judge asked him if he had reviewed the paperwork with counsel. He told the judge he understood his rights after they were explained to him by the judge. He said that despite his representation to the court at the guilty plea hearing that he had reviewed the paperwork with his family, he had not done so.

On redirect examination, the Petitioner testified that he had never heard of a hybrid sentence until post-conviction counsel explained it to him. He did not know what a best-interest plea was. He said that going to trial with trial counsel was not in his best interest. He said counsel never advised him of concerns about the case except that counsel knew the facts did not support first degree murder.

On recross-examination, the Petitioner agreed that thirty years was better than a life sentence. He acknowledged that he knew when the plea was negotiated that it called for a thirty-year sentence at 100%.

Trial counsel testified that at the time he represented the Petitioner, he was certified to represent defendants in criminal cases, although he had not renewed his certification. He said the district attorney's office had a policy in certain cases, including first degree murders, of "no reduction from the minimums in the range of punishment" unless the defense demonstrated a legal or ethical reason for doing so. He said significant negotiation was required to obtain a reduction. He spoke with the prosecutors, the Petitioner's brother's attorney, and the Petitioner's family. He said that the negotiations in such cases often were unsuccessful and that the Petitioner's case was difficult. He noted the pressure on the State from the victim's family. He said he talked to the prosecutor, the prosecutor's supervisor, and a third prosecutor who had the "ultimate authority."

Trial counsel testified that he was retained when the Petitioner's case was still in juvenile court. He said he met with the Petitioner before the transfer hearing. Because the

case began in juvenile court, he had a lot of information about the State's evidence in the early stages of the proceedings. He told the Petitioner his objective was to get the charge reduced below first degree murder. He told the Petitioner that due to the high number of homicide cases, a Shelby County jury might return a guilty verdict to first degree murder.

Trial counsel testified that he did not treat the Petitioner differently from any of his other clients. He said he provided his clients with discovery, talked to them about their cases, and updated them and their family members. He said that he made sure that his clients had important information about their cases but that clients and their families sometimes had unreasonable expectations. He said that he was not allowed to discuss a case with a family member and that the person who paid his fee usually wanted more information than he could give the person.

Trial counsel testified that he did the best he could with the Petitioner's case. He said the Petitioner's brother was factored into the Petitioner's decisions. He and the Petitioner discussed that the plea agreement would allow the Petitioner to live some of his adult life outside of prison. He said he tried unsuccessfully to get the State to agree to fifteen years. He said the Petitioner signed the plea agreement after they discussed it. He said that rather than stipulating to the State's facts at the guilty plea hearing, he explained the basis for and concerns about the plea.

On cross-examination, trial counsel testified that in his opinion, the Petitioner understood the plea agreement, that it was in his best interest, and that he wanted to accept the agreement when he did. Counsel said a lot of thought and effort went into the settlement. He said it was the Petitioner's decision to accept the agreement. He said the Petitioner never expressed any dissatisfaction about his representation. He said he always had an excellent working relationship with the Petitioner's mother and aunt and had represented the aunt's son previously. He said he did not keep records of jail visits and did not know whether the Petitioner's claim of two visits was accurate. He noted that in addition to the ethical issue involved, keeping the Petitioner's family fully advised was complicated by the fact that the Petitioner's brother was also charged with the offense.

Trial counsel testified that he gave the Petitioner all the information he had. He said he tried to explain everything to the Petitioner but noted the difficulty in doing so with a sixteen-year-old client. He recalled that it was "weighing on" the Petitioner that the decisions he made affected his brother.

Trial counsel testified that he could not imagine he did not give the discovery materials to the Petitioner. He did not know why he sent the discovery packet to the

Petitioner after the Petitioner was in prison, but he said things sometimes happened to a prisoner's papers and he sent it when requested.

Trial counsel said he did not use the term "hybrid sentence" because most people do not understand it. He referred instead to "negotiated plea agreements." He said he always explained lesser included offenses that might arise at trial and what a negotiated plea agreement was. He said he did not file any motions in the case because he knew what he was dealing with from the beginning. He said that even if he had filed a motion to suppress, there were too many eyewitnesses to the crime. He said that in his professional opinion, a motion to suppress would have been counterproductive because the State stopped negotiating at that point. He found it hard to believe that the Petitioner did not know the outcome of his investigation because they discussed things as they developed. He recalled that there was no argument for self-defense and that there was an argument for premeditation.

On redirect examination, trial counsel testified that he was currently representing another member of the Petitioner's family. He said that just days before the plea for thirty years was entered, the offer had been for forty years.

The trial court found that the State had a strong case against the Petitioner based upon the confession and the fact that he left the scene and returned with a gun. The court said that no legal basis for suppressing the confession had been shown and that trial counsel acted in the Petitioner's best interest by not filing a motion in order keep open plea negotiations. The court found that counsel was prepared, kept the Petitioner informed, and successfully negotiated a plea agreement that kept both the Petitioner and his brother from serving life sentences. The court found that the Petitioner failed to prove that counsel's performance was deficient or that he was prejudiced by it. The trial court reviewed the transcript of the guilty plea hearing that had been offered as an exhibit. Based upon it, the court found that the Petitioner was advised of his rights by the trial court. The court denied relief. This appeal followed.

**I**

The Petitioner contends that trial counsel provided ineffective assistance in the trial proceedings. The State contends that the trial court correctly determined that the Petitioner failed to prove this claim. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn.

2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id.

The United States Supreme Court, in Hill v. Lockhart, 474 U.S. 52 (1985), applied the two-part Strickland standard to ineffective assistance of counsel claims arising out of a guilty plea. The Hill court modified the prejudice requirement by requiring that a petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. 474 U.S. at 59; Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202–04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

The Petitioner argues that trial counsel provided ineffective assistance by failing to investigate the case and discuss the information with the Petitioner or his family and by failing to investigate the facts of the confession and file a motion to suppress. The record reflects that counsel understood the facts of the case, that he discussed the facts, law, and strategy with the Petitioner, and that he discussed the case with the Petitioner's family to the extent he could do so ethically and without compromising the Petitioner's best interests in light of the Petitioner's brother's involvement. Counsel knew that the evidence against the Petitioner was strong and that the goal was to avoid the Petitioner and his brother having to serve life sentences. Counsel achieved that goal. The Petitioner showed no signs of dissatisfaction with the representation at the time he accepted the plea agreement. Counsel explained the plea agreement to the Petitioner, and it was the Petitioner's decision to accept it. Counsel explained that not only would a motion to suppress the confession be of little practical effect because of numerous eyewitnesses, a motion would have been counterproductive because the State would have ceased plea bargain negotiations. The evidence does not preponderate against the trial court's factual determinations. The Petitioner failed to prove that trial counsel's performance was deficient or that he was prejudiced. He is not entitled to relief on this basis.

## II

The Petitioner contends that his guilty plea was not knowingly, voluntarily, and intelligently made. The State counters that the Petitioner waived the issue by failing to include the transcript of the guilty plea hearing in the record and that in any event, the guilty plea was not induced by ineffective assistance of counsel. The Petitioner is not entitled to relief.

The transcript of the post-conviction hearing reflects that the court received the transcript of the plea hearing as an exhibit and that the trial court relied on it in denying relief. The table of contents of the post-conviction transcript, however, states "none" in the listing of exhibits. The Petitioner was required to prepare an appellate record that conveys

a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). To the extent that the Petitioner attacks the constitutional aspects of the plea itself, we presume that the trial court's ruling was supported by the evidence.

To the extent that the Petitioner attacks the plea as having been unlawfully induced by trial counsel's ineffective assistance, we will review the claim on the record before us. The trial court accredited the testimony of counsel that he knew the facts of the case, advised the Petitioner about the facts and the law, and negotiated a plea agreement that was in the Petitioner's best interest and in accord with the wishes of the Petitioner and his family that he and his brother not serve life sentences. Because the Petitioner failed to establish ineffective assistance of counsel, his claim of an involuntary plea due to counsel's performance fails, as well.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE